IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-01720-REB-KLM

SHANNON MURPHY,

    Plaintiff,

v.

LOWES COMPANIES, INC.,

    Defendant.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendant's **Motion to Dismiss** [#16][1] (the "Motion"). Plaintiff filed a Response [#17] in opposition to the Motion [#16], and Defendant filed a Reply [#27]. Pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1(c), the Motion [#16] has been referred to the undersigned for recommendation. *See* [#26]. The Court has reviewed the Motion, Response, Reply, the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion [#16] be **GRANTED**.

**I. Summary of the Case**

This lawsuit was filed on July 14, 2017. *Compl.* [#1]. Plaintiff asserted five claims for relief but the only claim at issue in the Motion is the claim for intentional infliction of emotional distress ("IIED"). *Motion* [#16].

---

[1] "[#16]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Recommendation.

The Court construes all of the allegations of the complaint in favor of Plaintiff, the non-moving party. *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). These allegations are as follows:

During April 2015, Plaintiff was hired by Defendant for the position of Project Specialist Interiors ("PSI") for Defendant's Greeley store. *Am. Compl.* [#14] ¶ 4. However, the start date of the PSI position was delayed so Plaintiff was hired on temporarily to the Garden Center of the Greeley store. *Id.* Plaintiff performed duties for the Garden Center until she officially began work as a PSI in the middle of July. *Id.* ¶¶ 9-10.

While working in the Garden Center, Plaintiff suffered a heart attack after moving a self-powered pallet jack loaded with hundreds of pounds of materials. *Id.* ¶¶ 11, 17. After recovering from her heart attack, Plaintiff inquired about her health insurance and was subsequently told that she was not yet covered because the PSI Program had not yet started. *Id.* ¶ 19. In order to pay her mortgage and medical expenses, Plaintiff applied for an emergency grant from Lowe's with assistance from her superior, Florinda Romero[2] ("Romero"). *Id.* ¶ 20. Ms. Romero did not file the application for several weeks and when she did she filled it out incorrectly. *Id.* ¶ 23. Ms. Romero then filed a new application that was approved and payment was issued to Plaintiff within forty-eight hours. *Id.*

In July 2015, Plaintiff began performing the duties of a PSI; however, Plaintiff was still paid an hourly rate and not compensated for mileage. *Id.* ¶ 25. After complaining about back pay, the relationship between Plaintiff and Ms. Romero soured. *Id.* ¶ 26. Ms. Romero and the in-store manager, Sean O'Brien ("O'Brien"), became hostile toward

---

[2] The complaint does not specify what position Ms. Romero held at Lowe's, but infers that her position was superior to Plaintiff's.

Plaintiff and referred to Plaintiff as the "garden waterer." *Id.* ¶ 27. In late 2015, Plaintiff was accused of stealing commissions. *Id.* ¶ 29. Mr. O'Brien and Ms. Romero told the other employees about the investigation but never told the other employees when the investigation had concluded and that Plaintiff was cleared. *Id.* ¶¶ 31-32.

Later, Mr. O'Brien began to brag to the employees about how much money Plaintiff was making for the store, which stirred resentment in the employees toward Plaintiff. *Id.* ¶ 33. To quell the employees' resentment, Mr. O'Brien suggested that Plaintiff buy the other employees gift cards and lunch. *Id.* ¶¶ 35, 39.

Eventually, Lee Ann Kimbrell ("Kimbrell"), the regional manager, began having Plaintiff train other employees for open PSI positions even though doing so was not in Plaintiff's job description. *Id.* ¶ 44. During this time, Plaintiff underwent a performance review and scored exceptionally well but only received a $0.17-per-hour raise, while other employees were given $1.00-per-hour or $2.00-per-hour raises. *Id.* ¶¶ 49-51. Plaintiff raised her concerns about the pay discrepancies with Mr. O'Brien and Ms. Romero but was met with more hostility and was told, "You should be happy with your commissions." *Id.* ¶ 52.

By 2016, Plaintiff was managing thirty projects and was working at two other Lowe's locations, which caused Plaintiff to have to work seven days a week and at one point 148 days straight. *Id.* ¶¶ 54-55, 66. Around this time a new assistant store manager was hired, Jason Krier ("Krier"). *Id.* ¶ 62. Mr. Krier continued the hostility toward Plaintiff by stating that she should not be making more money than him and by stating that Plaintiff had "Resting Bitch Face." *Id.* ¶¶ 63-64.

Throughout her time at Lowe's, Plaintiff complained about her co-workers refusing

to perform their duties when they were supposed to assist her.  *Id.* ¶ 69.  One time, Plaintiff learned of a co-worker allowing builders to perform work even though they had not received the proper building permits.  *Id.* ¶ 73.  When Plaintiff raised her concerns about this incident and other incidents concerning contractors to Ms. Kimbrell, Ms. Romero, and Mr. O'Brien, she was told not to worry about it or was ignored.  *Id.* ¶¶ 73-74, 81-82.  Plaintiff's struggles with the employees and managers led her to request a transfer on multiple occasions, which she was denied each time.  *Id.* ¶ 57.

On one occasion Plaintiff was written up for a bad attitude after assisting a customer who could not get assistance from other Lowe's employees.  *Id.* ¶¶ 85-86.  Plaintiff's dealings with Lowe's culminated in her again being accused of stealing commissions.  *Id.* ¶ 95.  Plaintiff was held in a room against her will for several hours.  *Id.* ¶¶ 96.  Plaintiff was prevented from leaving the room by threats of being fired or arrested.  *Id.* ¶¶ 98,103.  In order to leave the room Plaintiff was told that she had to sign a document which stated that she stole commissions.  *Id.* ¶ 109.  However, Plaintiff was not allowed to read the document.  *Id.* ¶113.  Mr. O'Brien later came into the room and told Plaintiff she was fired and handed her $2,007 in cash.  *Id.* ¶ 115.  Plaintiff was then instructed to sign a document which was supposedly a receipt for the cash.  *Id.* ¶ 118.  After more than two hours in the room, Plaintiff eventually signed the document and was then escorted out through the store.  *Id.* ¶¶ 119-120.  According to Plaintiff, the firing process and the embarrassment of having her co-workers witness her being escorted out of the store caused her to "break down emotionally."  *Id.* ¶ 123.

## II. Standard of Review

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the

sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). That is, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *TON Services, Inc. v. Qwest Corp.*, 493 F.3d 1225, 1235 (10th Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do. Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted).

### III. Analysis

Defendant argues that Plaintiff's allegations do not rise to the level to support a claim for outrageous conduct. *Motion* [#16] at 2. Defendant further argues that Plaintiff did not allege any facts showing that she actually suffered severe emotional distress. *Reply* [#27] at 4. The Court agrees.

"In Colorado, to state a claim for intentional infliction of emotional distress by outrageous conduct, a plaintiff must allege behavior by a defendant that is extremely egregious." *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 665 (Colo. 1999). The elements of outrageous conduct are: (1) the defendant engaged in extreme and outrageous conduct, (2) recklessly or with intent of causing severe emotional distress, and (3) causing the

plaintiff severe emotional distress." *Pearson v. Kancilia*, 70 P.3d 594, 597 (Colo. App. 2003). To determine whether a plaintiff has alleged behavior that is outrageous as a matter of law, the trial court must analyze the totality of the defendant's conduct. *Green v. Qwest Serv. Corp.*, 155 P.3d 383, 385 (Colo. App. 2006). Although the question of whether conduct is outrageous is generally one of fact to be determined by a jury, it is first the responsibility of a court to determine whether reasonable persons could differ on the question. *Culpepper v. Pearl St. Bldg., Inc.*, 877 P.2d 877, 883 (Colo. 1994). Plaintiff's allegations, even taken as true, do not rise to the high standard required to support a claim for outrageous conduct. It takes extreme behavior, the type of conduct that must lead an average member of the community to exclaim "Outrageous!" *Churchey v. Adolph Coors Co.*, 759 P.2d 1336. (Colo. 1988).

Defamatory remarks have been found to be outrageous conduct when the remarks pertain to someone's personal life and family. *See Han Ye Lee v. Colo. Times, Inc.*, 222 P.3d 957, 964 (Colo. App. 2009). The remarks in *Han Ye Lee* regarded a woman's loyalty to her husband and were published in a newspaper which was distributed to the public for free. *Id.* at 959. Plaintiff's allegations of defamatory remarks are not of this personal nature nor were they widely publicized. Plaintiff alleges that fellow employees' knowledge of her being investigated for theft contributed to her emotional distress, but the employees were only told that Plaintiff was being investigated, not that she was actually guilty of theft. *Am. Compl.* [#14] ¶ 31. Remarks to employees that a co-worker could possibly be a thief are not as severe as publication of a statement that a wife's negligent actions led to her husband's killer being freed. *See Han Ye Lee*, 222 P.3d 957 at 964. According to Plaintiff, after she was fired from the store, employees told customers that they did not know what

happened to her or that she was "fired for doing some bad things."  *Am. Compl.* [#14] ¶ 130.  Doing "bad things" is vague and although such statements may have upset Plaintiff, the bar for an emotional distress claim is simply higher.  *See Han Ye Lee*, 222 P.3d 857 at 964.

An IIED claim may also survive a Rule 12(b)(6) motion when the defendant knew of the plaintiff's vulnerable state.  *See Christen-Loper v. Bret's Electric, LLC*, 175 F.Supp. 3d 1213 (D. Colo. 2016).  In *Christen-Loper* the plaintiff suffered from bi-polar disorder and had to be hospitalized and put on suicide watch.  *Id.* at 1126.  The defendant knew of the plaintiff's status and still sent a lawyer to the plaintiff's home to terminate her employment.  *Id.*  Compared to *Christen-Loper*, Plaintiff in the present case has not alleged that she suffered from any particular mental disorder or that her supervisors were aware of any mental suffering, but merely stated that she "broke down emotionally."  *Am. Compl.* [#14] ¶ 123.  Plaintiff does not allege that Defendant was aware of Plaintiff's vulnerable mental state, if one existed, and tried to take advantage of it.  It is true that in *Christen-Loper* the defendant yelled at and shouted obscenities at the plaintiff, but those facts were taken in context with the additional fact that the defendant knew of the plaintiff's vulnerable mental state in order to rise to the level of outrageous conduct.  175 F.Supp. 3d at 1126.  Here, Plaintiff has alleged unfair treatment and defamatory remarks from her superiors, but "defamatory remarks do not support a claim of intentional infliction of emotional distress." *Katz v. City of Aurora*, 85 F.Supp. 3d. 1012, 1021 (D. Colo. 2000) (citing *Steinberg v. Thomas*, 659 F.Supp. 789, 795 (D. Colo. 1987)).

Plaintiff's claim is much more akin to those claims which have not survived a Rule 12(b)(6) motion.  Where an employee has been subject to threats and intimidation and

where that employee was held against his will, it was found that the defendant's conduct did not rise to the level of outrageous conduct. *Martensen v. Koch*, No. 13-cv-02411-REB-CBS, 2014 WL 3057172, at *8 (D. Colo. July 7, 2014). The plaintiff in *Martensen* was held against his will for numerous hours and was accused of defrauding the company.[3] *Id.* at *4. The court held that this conduct by the defendant, even taken as true, did not rise to the level of outrageous conduct. *Id.* at *8. Even when an employee has been retaliated against, verbally berated, and unfairly treated, courts have found that, without more, this type of conduct does not amount to outrageous behavior. *See LaBrecque v. L3 Commc'n. Titan Corp.*, No. 05-cv-00642-REB-MJW, 2007 WL 1455850, at *5 (D. Colo. May 16, 2007) (after reporting a workplace violation, an employee was angrily scolded by his superior officer, was forced to move his work area to a basement without a desk, chair, or computer, was then forced to move his workplace to where it was impossible to get his work done, and then was fired).

Plaintiff alleges that she was held against her will, retaliated against, verbally mocked and treated unfairly. *Am. Compl.* [#14] ¶¶ 27, 43, 64, 69, 75, 86, 96. However, this conduct does not rise to the level of outrageousness held necessary to state a viable IIED claim by prior case law. Plaintiff was held for approximately three hours, which is significantly less time compared to the plaintiff in *Martensen*. *Id.* ¶ 119. Plaintiff suffered similar retaliation to the plaintiffs in *LaBrecque* in that she was forced to work without an office or computer. *Id.* ¶ 43. Plaintiff alleges that she was retaliated against for actions

---

[3] An exact amount of hours is not given but the plaintiff was forced to sit through several hours of interrogation on a secluded ranch. The plaintiff was then held from 5:00 p.m. until approximately 2:00 a.m, when the plaintiff was then forced to board a private plane. The flight lasted about 2 hours. The plaintiff was held against his will for approximately 11 hours in total, not including the time spent being interrogated.

she took to assist a customer. *Id.* ¶¶ 85-86. However, retaliation by employers and employees of the kind alleged by Plaintiff does not rise to the level of outrageousness sufficient to constitute an IIED Claim. *See Ayon v. Kent Denver Sch.*, No. 12-cv-2546-WJM-CBS, 2013 WL 1786978 (D. Colo. April 26, 2013) (stating that employer ignored the plaintiff's complaints, refused to speak to the plaintiff, scolded the plaintiff, lost his temper with the plaintiff, fired the plaintiff, withheld the plaintiff's bonus, and refused recommendations for the plaintiff). Plaintiff's allegations, taken in totality, *See Green*, 155 P.3d 383, 385, do not rise to the level of outrageous conduct as set forth in cases like *Christen-Loper* and *Han Ye Lee*.

Regardless of whether Defendant's conduct rises to the requisite level of outrageousness, Plaintiff's claim also fails because she has not articulated a manifestation of severe mental suffering. The closest that Plaintiff comes to specifying her mental suffering is stating that she "broke down mentally," and that she endured emotional pain and suffering, mental anguish, inconvenience and loss of enjoyment of life. *Am. Compl.* [#14] ¶¶ 123, 165. These allegations are general and conclusory. *See Martensen*, 2014 WL 3057172, at *8. Even a plaintiff alleging that he suffered from anxiety and depression which impacted his ability to sleep has been found to be too general to constitute a manifestation of severe mental suffering. *Id.* Plaintiff's allegations are more general than the insufficient allegations pled in *Martensen*.

### IV. Conclusion

For the foregoing reasons, the Court respectfully **RECOMMENDS** that the Motion

[#16] be **GRANTED**.[4]

IT IS **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: June 4, 2018

BY THE COURT:

*/s/ Kristen L. Mix*

Kristen L. Mix
United States Magistrate Judge

---

[4] If this recommendation is adopted in full, the following claims will remain: (1) sex discrimination in violation of Title VII of the Civil Rights Act of 1964, (2) violation of the Equal Pay Act, (3) false imprisonment, and (4) defamation.